NUMBER 13-04-394-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG  

 

EDGARDO ORTEGA,                                                                      Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                 Appellee.

 

On appeal from the 117th District
Court of Nueces County, Texas.

 

                                MEMORANDUM
OPINION

 

                          Before
Justices Yañez, Castillo, and Garza

                            Memorandum
Opinion by Justice Yañez

 








Appellant, Edgardo Ortega,[1]
was indicted for unlawful possession of cocaine with intent to deliver.[2]  The indictment further alleged that he used
or exhibited a deadly weapon during the commission of the offense.[3]  After a jury trial, appellant was acquitted
of the deadly weapon charge and found guilty of the possession charge.  The jury assessed his punishment at ten years= confinement and a $3,000 fine.  

The trial court has certified that this case is not
a plea-bargain case and the defendant has the right of appeal.[4]  As this is a memorandum opinion and because
all issues of law presented by this case are well-settled and the parties are
familiar with the facts, we will not recite the law or facts, except as
necessary to advise the parties of the Court's decision and the basic reasons
for it.[5]


By four issues, appellant contends the trial court
improperly (1) allowed testimony of two of the State=s witnesses, Officer Gonzalez and Officer Loa,[6]
(2) denied his motion for mistrial because of improper prosecutorial comments
made during cross-examination of a defense witness, (3) refused to allow his
trial counsel to question a prospective juror regarding the drug amount alleged
in the indictment, and (4) admitted municipal court documents into
evidence.  We affirm.








Regarding appellant=s
first issue, he argues generally that the officers= testimony (1) was irrelevant, (2) amounted to
speculation, (3) was highly prejudicial and inflammatory,  (4) constituted a forbidden opinion on an
ultimate jury issue, and (5) was improperly elicited by the State=s leading questions. 

The admissibility of evidence is within the
discretion of the trial court and will not be reversed absent an abuse of
discretion.[7]


Regarding appellant=s
first and second subissues, he argues generally that the officers= testimony regarding gangs and drug-dealing was
irrelevant and based on speculation.  

The State sought to prove at trial that appellant
was engaged in drug trafficking.  In
support of this theory, the officers testified regarding common patterns in
drug and weapon trafficking schemes.  The
record shows that appellant=s trial counsel objected during direct examination
of Officer Gonzalez when the officer testified that drug dealers often invade
homes of rival gangs because they know that drugs are present within the
homes.  The trial court sustained the
objection and instructed the jury to disregard the comment regarding gangs.

 To preserve
error for appellate review, a party must object each time the complained-of
evidence is offered.[8]  When substantially similar evidence is
subsequently admitted without objection, an appellate complaint is forfeited.[9]   








In this case, although appellant=s trial counsel objected to the testimony of the
officers several times on the grounds of relevance and speculation,
substantially similar evidence was later introduced without any objection based
on speculation or relevance. 
Specifically, the record shows that after Gonzalez testified, Officer
Loa testified without objection that drug rip-offs occurring within the city
are common, that gangs distribute narcotics, and that individuals living with
drug dealers are often trusted by such dealers. 
Officer Loa also stated, without any objection, that in drug-dealing it
is common for several people to live in one drug house Abecause they=re also in on the enterprise, whether it be in helping
finance it or in the packaging or the sale of it.@  Because counsel failed to object on the
specific grounds of relevance and speculation each time the testimony was
offered, and because similar evidence was subsequently introduced without
objection, appellant has failed to preserve his complaint that the officers= testimony was irrelevant and based on speculation.[10]

Regarding appellant=s
third subissue, he contends generally that the officers= testimony was highly prejudicial and
inflammatory.  However, a defendant must
raise a separate trial objection to the evidence based upon rule of evidence
403 in order to properly preserve the complaint for appeal.[11]  Here, appellant=s
trial counsel did not raise a rule 403 objection to the officers= testimony, or complain that the prejudicial effect
of the testimony outweighed its probative value; appellant thus failed to
preserve error on this ground.[12]









In his fourth subissue, appellant complains
generally that the officers= testimony was inadmissible because the testimony
constituted a forbidden opinion on an ultimate issue that invaded the province
of the jury.  Appellant specifically
references two instances: (1) Officer Gonzalez=s
statement that it is possible for a Ahome invader [to obtain only] a portion of . . .
drugs in a home;@ and (2) Officer Loa=s
testimony that (a) drug trafficking is a family business, and (b) it would be
difficult to believe that any individual residing in a drug house would be
completely innocent. 

The record reflects that appellant=s wife, Melissa, called 911 and claimed that someone
was invading their home in an attempt to abduct their baby.  Shortly after the call, police arrived at the
residence and discovered the baby unharmed, sitting on the front porch of the
residence.  At trial, the State sought to
disprove the justification for the call by arguing that Melissa actually called
police because of a drug deal that had gone bad.  In support of its argument, the State
elicited the two complained-of statements from the officers.

Regarding Officer Gonzalez=s statement, the record reflects that after Gonzalez
made the complained-of statement, without any objection, he further testified
that in situations where drug traffickers invade a home, A[T]hey look quickly and find a bunch and they=re happy and they=re
satisfied with that, take what [they] can and get out . . . while the getting
is good . . . .  Of course that might
leave some behind.@  

Regarding the complained-of statement made by
Officer Loa, the record shows that after he made the statement, without any
objection, he further stated that in drug trafficking, Aseveral individuals get together from a rival drug
dealer or a gang, and they=ll just go in there and break the door down or do
whatever they have to do, gain entry to the house, and steal whatever the drugs
are inside the house.@  








To preserve error for review, a party must object
each time the complained-of evidence is offered.[13]  When substantially similar evidence is
subsequently admitted without objection, an appellate complaint is not
preserved for review.[14]  Because appellant=s trial counsel failed to object to the testimony
each time it was offered on the basis that it constituted a forbidden opinion
on an ultimate jury issue, appellant failed to preserve this complaint for
appellate review.[15]
         

Regarding appellant=s
fifth subissue, he argues that the trial court erred because it allowed the
State to repeatedly ask leading questions on direct examination.  Specifically, appellant complains that the
leading questions Asuggested harmful prejudicial answers which even
though sustained, left their mark on the Jury.@  In appellant=s
brief, he references the following questions asked by the State:

(1)       But
will a drug dealer allow someone to live in a house that doesn=t  know about
the drugs?

 

(2)       Do
they like sometimes to have more than one person living in the 

house to 
guard the drugs?

 

(3)       So it=s kind of a family business type thing?

 

(4)       What
is crack cocaine?

 

(5)       And
when these home invasions occur, do the people sometimes set up the targets so
that the males, for whatever reason, will be gone when they intend to do the
home invasion?

 








(6)       Have
you found, through your experience, that drug dealers like to even have other
people living in the home with them that are also involved in the drug
business?          

 

Texas Rule of Evidence 611(c) does not forbid the
asking of leading questions; it states that leading questions "should not
be used on the direct examination of a witness except as may be necessary to
develop the testimony of the witness."[16]  Although rule 611(c) permits leading
questions, trial courts generally allow leading questions only in limited
situations.  For example, leading
questions are sometimes allowed if a child[17]
or mentally challenged witness testifies, or in situations where leading
questions are helpful in developing a witness=s
background.[18]  Nevertheless, asking leading questions is
seldom a ground for reversal.[19]

Permitting leading questions on direct examination
is a matter within the discretion of the trial court.[20]  Abuse of discretion cannot be shown
"unless [appellant] can show that he was unduly prejudiced by virtue of
such questions."[21]








We have examined the record regarding the
complained-of leading questions. 
Regarding question (1), the record shows that at trial, appellant=s counsel objected on a ground other than Aleading.@[22]  Because
appellant=s complaint on appeal differs from that made at
trial, any error as to question (1) is not preserved for appellate review.[23]  

Regarding question (4), we note that although
counsel for appellant=s co-defendant objected, appellant=s counsel did not object.  Accordingly, appellant has failed to preserve
any complaint as to question (4) for our review.[24]

As to questions (3), and (5), appellant=s counsel objected on the basis of leading and the
trial court sustained the objections.  In
each instance, however, appellant failed to specifically complain that the
questions Asuggested harmful prejudicial answers@ and failed to pursue such complaint to an adverse
ruling.[25]  Therefore, any complaints as to questions (3)
and (5) are not preserved for appellate review.[26]

With respect to questions (2) and (6), the following
exchange occurred:

Q [State]:                                            Do
they like sometimes to have more than one person living in the house to guard
the drugs? [Question 2]

 

A [Officer Loa]:                                  It=s common.

 

[Counsel for Co-defendant]:             Again, Your Honor, now we=re
getting way beyond the scope of whatever her direct examination.








 

[Court]:                                                What
is your legal objection?

 

[Counsel for Co-defendant]:             The legal objection is speculation, Judge, calling for
speculation and leading. 

 

[Court]:                                                I=m going to sustain on leading.

 

Q [State]:                                            Have
you found, through your experience, that drug dealers like to even have other
people living in the home with them that are also involved in the drug
business? [Question 6]

 

[Appellant=s Counsel]:                       Your Honor, I=m gonna object to the leading nature of the
questions, and I=m gonna ask that the Court instruct the prosecutor
because I think she=s trying to get it in withoutB even over the objections that we=re making, which she, I think, is very effectively
doing. 

 

[Court]:                                                All
right.  I=m
gonna sustain on leading.

 

Q [State]:                                            Have
you found, through your experience, that sometimes several people live in one
drug house?

 

A [Officer Loa]:                                  It=s very common.

 

Q [State]:                                            Can
you explain why?

 

A: [Officer Loa]:                                 Well,
because they=re also in on the enterprise, whether it be in
helping finance it or in the repackaging or the sale of it. 

 








In order to preserve an issue for appeal, an
objection must call the attention of the trial court to the particular
complaint raised on appeal and afford the court an opportunity to rule on it.[27]  Regarding the specificity of an objection, Aall a party has to do to avoid the forfeiture of a
complaint on appeal is to let the trial judge know what he wants, why he thinks
himself entitled to it, and to do so clearly enough for the judge to understand
him at a time when the court is in a proper position to do something about it.@[28]  








Here, even if we were to conclude from the context
that appellant=s counsel=s Aleading@ objection was sufficiently specific to put the
trial court on notice of appellant=s complaint of Asuggested harmful prejudicial answers,@ we would nonetheless conclude that appellant failed
to preserve any error by failing to pursue his objection to an adverse
ruling.  Appellant=s complaint that the State=s questions Asuggested harmful prejudicial answers@ is, in effect, a complaint that the prosecutor
engaged in improper argument and other misconduct.  The proper method to preserve error regarding
improper argument or prosecutorial misconduct is to (1) make a timely objection
and secure a ruling; (2) if the objection is sustained, request the trial court
to instruct the jury to disregard the statement; and (3) if the instruction is
given, move for a mistrial.[29]  By failing to pursue his objection to an
adverse ruling, appellant failed to preserve any issue for our review.[30]  Having considered all of appellant=s subissues, we overrule his first issue.        

In appellant=s second issue, he argues the trial court erred in
its denial of his motion for mistrial because the State made improper comments during
cross-examination of a defense witness. 
Appellant points specifically to the following exchange: 

 

Q [State]:                                            Okay.  Now, isn=t it true that you=re a
little bit afraid of these Defendants?

 

A [Witness]:                                       Why
would I be afraid of people that I don=t know?

 

Q [State]:                                            Because
they=re drug dealers.

 

[Appellant=s Counsel]:                       I=m gonna object to that, Your Honor.  I=m gonna object to that.

 

[Court]:                                                It=s not a question, and I will sustain the objection.

 

[Appellant=s Counsel]:                       Your
Honor, IB

 

[Court]:                                                You
are answering a question.  I=m gonna sustain the question.

 

[Appellant=s Counsel]:                       I
would ask that the jury be instructed to disregard it.

 

[Court]:                                                The
jury, you are to disregard the statement made by the prosecutor.

 

[Appellant=s Counsel]:                       Furthermore,
Your Honor, we would move for mistrial.

 








[Court]:                                                And
that will be denied.

 

[Counsel for Co-defendant]: Judge, we move for a mistrial because there=s been a total mischaracterization of our clients
before this jury at this time and beforeB 

 

[Court]:                                                And
I haveC 

 

[Counsel for Co-defendant]: C and it has invaded their province.

 

[Court]:                                                [Counsel
for Co-defendant]C 

 

[Counsel for Co-defendant]: The case has not gone to the jury yet, Your HonorC 

 

[Court]:                                                [Counsel
for Co-defendant], I=ve ruled.

 

[Counsel for Co-defendant]: C and it=s highly prejudicial.

 

[Court]:                                                Sit
down, please.  You may continue.         

 








A trial court's denial of a motion for mistrial is
reviewed under an abuse of discretion standard.[31]  Mistrial is appropriate only for "highly
prejudicial and incurable errors."[32]  It may be used to end trial proceedings when
faced with error so prejudicial that "expenditure of further time and
expense would be wasteful and futile."[33]  A prompt instruction to disregard will cure
error associated with an improper question and answer.[34]  When a trial court instructs the jury to
disregard an improper comment, it is presumed that the jury will follow the
court's instruction unless the remark or comment was so prejudicial or extreme
that the instruction was incapable of removing the harm.[35]  The trial court is required to grant a motion
for a mistrial only when the improper question is Aclearly prejudicial to the defendant and is of such
character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jurors.@[36]  Whether an
argument is harmful enough to warrant reversal is ultimately determined on the
basis of the argument's probable effect on the minds of the jury.[37]

The State's comment that appellant was a drug dealer
was clearly prejudicial, clearly calculated to inflame the minds of the jury,
and was highly improper.[38]  Essentially, the State was asserting as fact
that appellant was guilty of the crime of which he was accused.  The State also improperly commented that the
witness had a reason to be fearful of appellant.  We strongly discourage the State from
soliciting or making any improper comments of this type in the future.[39]









We must determine, however, whether the prosecutor=s comment was harmful enough to warrant reversal
based on the argument's probable effect on the minds of the jury.[40]  We note that Officer Loa gave the following
testimony, without objection:

[State]:            Let
me show you what has been marked as, I believe, State=s Exhibit 6. 
Do you recognizeCexcuse me, would State [sic] State=s Exhibit 6, which has already been admitted into
evidence, can you please describe for the jury what you=re seeing there, including its consistency?

 

[ Loa]:             Just
by the smell that I=m receiving, I can detect that it=s cocaine in big chunks, which is indicative that it
came from what we call a brick which is usually a kilo which is compressed
solid like a brick.  And these are big
chunks indicative that it came from a kilo.

 

. . . .

 

[State]:            Now,
would that be considered a large or small amount of cocaine for someone to
have?

 

[Loa]: No, it=s a large amount.

 

[State]:            Okay.  Now, with that amount of cocaine, does
somebody just leave it lying around a house?

 

[Loa]: No, ma=am.  It=s several thousand dollars worth right there.

 

. . . .

 

[State]:            As
an experienced narcotics investigator, do you have an opinion as to whether or
not that amount of cocaine was for personal use or was for selling cocaine?

 

[Loa]: For
resale, for redistribution, and for repackaging.

 

[State]:            Okay.  As an experienced narcotics investigator, do
you have an opinion regarding the scales that were found, including the triple
beam scale?

 

[Loa]: Yes, ma=am.

 








[State]:            What
is your opinion regarding these scales?

 

[Loa]: That
they are used to re-weigh narcotics after it=s been
what we call cut because this is veryBprobably a very high percentage, the purity in it,
and that would probably be cut or stepped on with other fillers, different
items that you put in there.  And then it=s weighed on any of these scales, and repackaged for
resale.

 

We conclude that even though the State=s Adrug dealer@ comment was clearly prejudicial, in light of the
other evidence, the trial court could have concluded that the jury would not
place much weight on the improper comment.[41]  We conclude the trial court did not abuse its
discretion in overruling appellant=s motion for mistrial.[42]  Appellant=s
second issue is overruled.     

By appellant=s third issue, he complains the trial court erred
because it refused to allow his trial counsel during voir dire to question a
prospective juror, Ms. Davila, regarding Aallegations in the indictment@ and how they Arelated to [her] feelings on probation.@   








The trial court has broad discretion over the
process of selecting a jury.[43]  The main reason for this is that voir dire
could go on forever without reasonable limits.[44]  We leave to the trial court's discretion the
propriety of a particular question and the trial court's discretion will not be
disturbed absent an abuse of discretion.[45]  A trial court's discretion is abused only
when a proper question about a proper area of inquiry is prohibited.[46]  A question is proper if it seeks to discover a
juror's views on an issue applicable to the case.[47]  An otherwise proper question is
impermissible, however, if it attempts to commit the juror to a particular
verdict based on particular facts.[48]  In addition, a voir dire question that is so
vague or broad in nature as to constitute a global fishing expedition is not
proper and may be prevented by the trial judge.[49]

The following exchange occurred at trial:

[Appellant=s Counsel]:                       Ms.
Davila, how do you feel about probation?

 

[Davila]:                                              Kind
of almost what he was saying.  I guess it
depends on the person if it=s gonna work for them or not because there=s ways to get around things.

 

[Appellant=s Counsel]:                       Is
the amountBokay.  Is the
amount of drugs involved gonna make a difference? 

 

[State]:                                                Objection,
Your Honor.  We can=t ask specifics about what would make them go one
way or the other.

 

[Court]:                                                Sustained.

 

[Appellant=s Counsel]:                       Your
Honor, may I be at least able to inform the jury of what the allegations are in
the indictment with respect to quantity?

 








[Court]:                                                I
think it=s a first degree felony, and there are quantitiesBI=m gonna explain this to the jury.  All kinds of drug possession or even
possession with intent to deliver, they=re divided under classifications depending upon the
amount of drugs and the type of drug that is involved.  With regards to a first degree felony, I
think what we can say it is in excess of a certain amount that has classified
it as a first degree felony.

 

[Appellant=s Counsel]:                       Okay.  But I can=t go
into the amount that=s allegedBthat they=re alleged to have possessed in the indictment?  I don=t need to go into the evidence.  I=m just going into the indictment and what the
allegations are in the indictment.  

 

[Court]:                                                I=m going to sustain the objection.

 

To the extent the trial court prevented appellant=s trial counsel from asking Ms. Davila questions,
the record does not disclose the specific questions counsel sought to ask.  Appellant=s
trial counsel failed to make a bill of exception, which would have properly
presented the questions for appellate review.[50]  Thus, error if any, has not been preserved.[51]  Appellant=s
third issue is overruled.

In his fourth issue, appellant claims the court
erred in admitting a municipal court record into evidence that showed he had a
prior conviction for possession of drug paraphernalia.  Appellant argues specifically that the record
introduced at trial was insufficient standing alone to prove his identity.








At trial, during the State=s cross-examination of appellant, he denied
knowledge of two scales police seized from his closet.  Over objections by appellant=s trial counsel, the State requested introduction of
a record from a Corpus Christi municipal court that showed appellant pleaded
guilty and was convicted of possession of scales as drug paraphernalia on or
about March 24, 2003.  Shortly
thereafter, trial counsel for appellant=s wife also offered into evidence, without any
objection by appellant=s trial counsel, another municipal court record that
showed that appellant=s wife had been charged with the same offense, on
the same day, and in the same municipal court. 
However, the record showed his wife had pled not guilty and was
subsequently acquitted.  Both records
were certified and bore the seal of the Corpus Christi municipal court
clerk.  After examining the records, the
trial court admitted both records into evidence.








The admissibility of evidence is within the
discretion of the trial court and will not be reversed absent an abuse of
discretion.[52]  Generally, the State must go forward with
independent evidence that the defendant is the same person named in a previous
conviction.[53]  However, there is a distinction between a
determination that a prior conviction has been sufficiently linked to a
defendant to permit its admission, and a determination that the evidence is
sufficient to prove a prior conviction.[54]  The first inquiry is one of conditional
relevancy, while the second inquiry is one of sufficiency.[55]  Under the doctrine of conditional relevance,
a trial court may admit evidence lacking authentication on the condition that
the offering party authenticate the evidence, or connect it up, at a later
time.[56]  If sufficient authentication or connection
does not appear by the close of the proponent's evidence, the opposing party
must renew the original objection by a motion to strike the conditionally
admitted evidence.[57]


In this case, we conclude that conditional
admissibility of the municipal record regarding appellant was appropriate,
subject to later proof of identity.[58]  Although appellant=s trial counsel presented expert testimony to
challenge the municipal court record, counsel never renewed his objection based
on identity, nor did he move to strike the record.  Accordingly, he has failed to preserve this
complaint for appellate review.[59]









Even if error had been preserved, there was
sufficient evidence to prove that appellant was the same person involved in
both proceedings.  Appellant had the same
name as the defendant in the municipal court proceeding.  The charges in this case also arose in Corpus
ChristiCthe same city where the defendant was convicted of
possession of drug paraphernalia in the municipal court proceeding.  The record further reflects that appellant=s wife was charged on the same day, with the same
offense, and in the same court as the defendant in the municipal
proceeding.  Moreover, trial counsel for
appellant=s wife requested, without any objection by appellant=s trial counsel, that the co-defendant=s municipal record be admitted into evidence.  Given the reasonable inferences a jury is
permitted to draw from evidence, and in light of counsel=s failure to renew his objection, we conclude it was
not an abuse of discretion to admit the municipal court record regarding
appellant into evidence.[60]  Appellant=s
fourth issue is overruled.

Because we have overruled all of appellant=s issues, the judgment of the trial court is
affirmed.   

 

 

_______________________

LINDA REYNA YAÑEZ,

Justice

 

 

 

Do not publish.                                              

Tex.R.App.P. 47.2(b)

 

Memorandum Opinion delivered and 

filed this the 13th day of October, 2005.

 

 

                                                                              











[1] 
Appellant and his wife, Melissa, were indicted for the same offenses and
their cases were subsequently tried before the same jury.  However, at trial, appellant and his wife
were represented by separate trial counsel. 
Melissa Ortega appeals separately in appellate cause number
13-04-393-CR.





[2] 
See Tex. Health &
Safety Code Ann. ' 481.112 (Vernon 2003).  





 

[3]  See Tex.
Code Crim. Proc. Ann. art. 42.12 ' 3g(a)(2) (Vernon 2004). 

 





[4] 
See Tex. R. App. P. 25.2(a)(2).   

 





[5] 
See Tex. R. App. P. 47.4.


 





[6]  Because
appellant complains of improper testimony in issues one and two, we will
address them in one issue.   

 





[7] 
See Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).           

 





[8] 
See Tex. R. App. P. 33.1; Ethington v. State, 819 S.W.2d 854, 858 (Tex.
Crim. App. 1991).

 





[9] 
See Mendoza v. State, 69 S.W.3d 628, 633 (Tex. App.BCorpus Christi 2002, pet. ref'd). 





[10] 
See Tex. R. App. P. 33.1; Ethington, 819 S.W.2d at 858; Mendoza,
69 S.W.3d at 633.

    





[11] 
See Tex. R. Evid. 403;
Tex. R. App. P. 33.1; Bell
v. State, 938 S.W.2d 35, 49 (Tex. Crim. App. 1996). 

 





[12] 
See Tex. R.
Evid. 403; Tex. R. App. P. 33.1; Bell, 938
S.W.2d at 49.    

 





[13] 
See Tex. R. App. P. 33.1; Ethington, 819 S.W.2d at 858; Mendoza,
69 S.W.3d at 633. 

  





[14] 
See Tex. R. App. P. 33.1; Ethington, 819 S.W.2d at 858; Mendoza,
69 S.W.3d at 633. 

 





[15] 
See Tex. R. App. P. 33.1; Ethington, 819 S.W.2d at 858; Mendoza,
69 S.W.3d at 633. 

 





[16]  See
Tex. R. Evid. 611(c). 

 





[17] 
See Rodriguez v. State, 997 S.W.2d 640, 643 (Tex. App.BCorpus Christi 1999, no pet.).

 





[18] 
See Cravens v. State, 687 S.W.2d 748, 753 (Tex. Crim. App. 1985) (en banc).

 





[19] 
See Rodriguez, 997 S.W.2d at 643. 


 





[20] 
See Wyatt v. State, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000). 

 





[21] 
See id.  

 





[22] 
Appellant=s trial counsel objected to
question (1) on the basis of speculation; the trial court sustained the
objection. 

 





[23] 
See Tex. R. App. P. 33.1;
Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

 





[24] 
Martinez v. State, 833 S.W.2d 188, 191 (Tex. App.BDallas 1992, pet. ref=d) (holding that a defendant who has not voiced his own
personal objection or adopted that of his co-defendant is foreclosed from
relying on the objection of his co-defendant to preserve error).

 





[25] 
See Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)
(holding failure to pursue an objection to a jury argument to an adverse ruling
forfeits complaint on appeal).

 





[26] 
See Tex. R. App. P.
33.1; Cockrell, 933 S.W.2d at 89.





[27]  See Alvarado v. State, 822 S.W.2d 236, 239
(Tex. App.BHouston [14th Dist.] 1991, pet. ref=d) (noting it is appellant=s burden to make specific and
proper objection calling the trial court=s attention to specific complaint raised on appeal).

 





[28]  See Lankston v. State, 827 S.W.2d 907, 909
(Tex. Crim. App. 1992) (en banc) (noting that Awhen it seems from context that a
party failed effectively to communicate his desire, then reviewing courts
should not hesitate to hold that appellate complaints arising from the event
have been lost.@) 

 





[29] 
See Cockrell, 933 S.W.2d at 89 (holding to complain on appeal of
improper jury argument, appellant must show he objected and pursued objection
to adverse ruling); Coe v. State, 683 S.W.2d 431, 436 (Tex. Crim. App.
1984) (noting that instruction to disregard cured any error in admission of
improper testimony).

 





[30] 
See Cockrell, 933 S.W.2d at 89; Coe, 683 S.W.2d at
436.  We note that in support of his
argument, appellant cites Dakin v. State, 632 S.W.2d 864, 864 (Tex. App.BDallas 1982, pet. denied).  In Dakin, the Dallas court found that
the State had engaged in prosecutorial misconduct by using leading questions
calculated to leave impressions on the minds of the jury and had engaged in
improper sidebar remarks and similar prejudicial conduct.  See id. at 866-68.  As noted, in the present case, appellant did
not characterize his issues as Aprosecutorial misconduct@ and more significantly, failed to preserve any such
claim.  Nonetheless, we note that as in Dakin,
the record before us contains Anumerous attempts by the prosecutor to circumvent rulings
made by the trial court,@ see id. at 865, and Anumerous attempts by the prosecutor
to present harmful facts, unsupported by the evidence, to the jury in the form
of questions.@ 
See id. at 866. 

 





[31] 
See Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). 

 





[32] 
See id. 

 





[33] 
See id.

 





[34] 
See Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000)
(en banc). 

 





[35] 
See Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)
(en banc).

 





[36] 
See Wood,
18 S.W.3d at 648.

 





[37]  See Morrow v. State, 757 S.W.2d 484, 494
(Tex. App.BHouston [1st Dist.] 1988, pet. ref=d). 
In Morrow, a case involving possession with intent to deliver,
the court found that error, if any, flowing from an improper argument
characterizing the defendant as a Abig drug dealer@ was cured by the court=s instruction to disregard. 
See id. at 493-94.

 





[38] 
See Gardner,
730 S.W.2d at 696.  

 





[39] 
See Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (Astrongly discourag[ing] the State
from soliciting or making any references to the wishes of the victim's family
or friends about the punishment to which the defendant should be sentenced.@).

 





[40]  See Morrow, 757 S.W.2d at 494. 

 





[41] 
See Simpson, 119 S.W.3d at 272-74 (concluding, after reviewing
evidence against appellant, that trial court's prompt instruction cured any
prejudice and that trial court did not abuse discretion in overruling motion
for mistrial).

 





[42] 
See id.  

 





[43] 
See Allridge v. State, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988) (en
banc).    

 





[44] 
See Faulder v. State, 745 S.W.2d 327, 334 (Tex. Crim. App. 1987)
(en banc). 

 





[45] 
See Allridge,
762 S.W.2d at 163; Faulder, 745 S.W.2d at 334.  

 





[46] 
See Allridge, 762 S.W.2d at 163. 


 





[47] 
See Faulder,
745 S.W.2d at 335.  

 





[48] 
See Standefer v. State, 59 S.W.3d 177, 179-80 (Tex. Crim. App. 2001). 

 





[49] 
See Barajas v. State, 93 S.W.3d 36, 39 (Tex. Crim. App. 2002). 

 





[50] 
See Tex. R.  App. P. 33.2;  Aquino v. State, 710 S.W.2d 747, 751
(Tex. App.BHouston [14th Dist.] 1986, pet.
ref'd) (holding that error was not preserved since the defendant failed to make
a bill of exceptions).

 





[51] 
See Tex. R.  App. P. 33.2; Aquino, 710
S.W.2d at 751.

 





[52] 
See Powell, 63 S.W.3d at 438. 


 





[53] 
See Rosales v. State, 867 S.W.2d 70, 72-73 (Tex. App.BEl Paso 1993, no pet.).

 





[54] 
See id.  

 





[55] See id.; see
also Smith v. State, 998 S.W.2d 683, 687 (Tex. App.BCorpus Christi 1999, pet. ref=d) ("Establishing the identity
of the defendant is a procedural matter entailing a question of conditional
relevance.").  

 





[56] 
See Tex. R. Evid. 104(b);
Fuller v. State, 829 S.W.2d 191, 198‑99 (Tex. Crim. App. 1992) (en
banc).  

 





[57] 
See Tex. R. App. P. 33.1;
Heidelberg v. State, 36 S.W.3d 668, 673 (Tex. App.BHouston [14th Dist.] 2001, no
pet.).   

 





[58] 
See Tex. R. Evid. 104(b); Fuller, 829 S.W.2d at 198‑99;
Heidelberg, 36 S.W.3d at 673.  

 





[59] 
See Tex. R. App. P. 33.1;
Heidelberg, 36 S.W.3d at 673.  

 





[60] 
See Tex. R. Evid. 104(b); Powell, 63 S.W.3d at 438; Heidelberg,
36 S.W.3d at 673.